UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **LOGAN RECHTERMAN,** Individually and on behalf of all others similarly situated | § § § § | |
| *Plaintiff,* | § § | Civil Action No. 6:16-cv-00383 |
| v. | § § | |
| **XPAT XTREME PUMP & TESTING LLC** | § § § | **JURY TRIAL DEMANDED** |
| *Defendant* | § § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. XPAT Xtreme Pump & Testing LLC ("XPAT") did not pay its Operators overtime as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the FLSA). Instead, XPAT paid them a salary with no overtime pay for hours worked over forty in a workweek. This collective action seeks to recover the unpaid overtime wages and other damages owed to these employees.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. All parties are subject to personal jurisdiction in the Eastern District of Texas.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) & (c) because XPAT resides in this District and most of the relevant facts occurred in this District.

### PARTIES

5. Plaintiff Logan Rechterman ("Rechterman") was employed by XPAT as an Operator. His written consent is attached hereto as Exhibit "A".

6. XPAT is a Texas limited liability company with its principal office located in Longview,

Texas.

7. The "Putative Collective Action Members," are all Operators employed by XPAT within the past three years.

**FACTS**

8. XPAT is an oilfield services company providing a variety of services, including testing pressure containment and blow out prevention. XPAT provides these services to oilfield customers, such as Conoco-Phillips.

9. XPAT's Operators, including Plaintiff Rechterman and the Putative Collection Action Members were responsible for operating high pressure testing units, assembling and disassembling wellhead assemblies using hydraulics wrenches, greasing wellhead assembly during operations, and ensuring the safe operation of the wellhead assembly and the related pieces of equipment. Because the wells were constantly in use, they required 24 hour supervision. This meant that at least one Operator had to be present at all times.

10. XPAT's gross annual revenues have exceeded the FLSA's $500,000 threshold for enterprise coverage for at least each of the last three years.

11. XPAT's employees routinely use, handle, sell, or work on vehicles, oilfield equipment, pumps, hoses, tools, and telephones. These items were produced for interstate commerce or actually traveled in interstate commerce.

12. XPAT is a covered enterprise under the FLSA during at least each of the last three years because it met the $500,000 gross revenue threshold and because its employees used, handled, sold or worked on goods or materials that were produced for interstate commerce or actually traveled in interstate commerce.

13. Plaintiff Rechterman began his employment with XPAT on or about February 2014 and worked for XPAT for approximately nine months until November 2014.

14. XPAT paid Plaintiff Rechterman and the Putative Collective Action Members an annual salary and a daily *per diem* with no overtime pay. Plaintiff Rechterman's salary was approximately $90,000.00 per year.

15. Plaintiff Rechterman and the Putative Collective Action Members regularly worked in excess of the FLSA's forty-hour weekly threshold for overtime pay. Specifically, Plaintiff Rechterman and the Putative Collective Action Members usually worked seven days per week, in excess of twelve hours per day.

16. Plaintiff Rechterman, for example, began his day by arriving at his assigned well sites at or before 5:30 a.m. when he was assigned to the day shift. After a brief safety meeting, his shift would begin at 6:00 a.m. and last until he was relieved at 6:00 p.m. The same was true if he was assigned to the night shift except that he would arrive at 5:30 p.m. and remain until 6:00 a.m. Depending on the work, Plaintiff Rechterman often worked beyond his shift. The result was that Plaintiff Rechterman worked in excess of 12 hours per day, usually 7 days a week. Accordingly, Plaintiff Rechterman and the Putative Collective Action Members regularly worked in excess of 84 hours per week.

17. Although it is well-known that blue-collar oilfield workers such as XPAT's Operators are not exempt from overtime pay under the FLSA, XPAT did not pay Plaintiff Rechterman, or the Putative Collective Action Members, the additional overtime premium required by the FLSA for hours worked in excess of forty in a workweek.

18. XPAT did not keep records of the hours Plaintiff Rechterman and the Putative Collective Action Members worked.

19. However, XPAT was well aware that Plaintiff Rechterman and the Putative Collective Action members regularly worked 84 or more hours per week and that they were not paid overtime.

**COLLECTIVE ACTION ALLEGATIONS**

20. In addition to Plaintiff Rechterman, XPAT employed the Putative Collective Action

Members. The Putative Collective Action Members, who were all employed as Operators, performed the job duties described above in paragraph 9.

21. Like Plaintiff Rechterman, the Putative Collective Action Members also regularly worked at least 84 hours per week with no overtime pay. Thus, the Putative Collective Action Members are similarly situated to Plaintiff Rechterman because they were subject to the same unlawful payroll practice as Plaintiff Rechterman. XPAT employed several dozen (or more) of the Putative Collective Action Members over the last three years.

22. The Putative Collective Action Members should be notified of this action and given the opportunity to seek the unpaid compensation owed to them pursuant to 29 U.S.C. § 216(b). Therefore, the class is properly defined as:

> "All Operators employed by XPAT Xtreme Pump & Testing LLC between April ___, 2013 and present."

## CAUSE OF ACTION

23. By failing to pay Plaintiff Rectherman and the Putative Collective Action Members overtime at one-and-one-half times their regular rates, XPAT violated the FLSA's overtime provisions.

24. XPAT owes Plaintiff Rechterman and the Putative Collective Action Members overtime wages equal to at least one-half times their regular rates for each overtime hour they worked during the three-year period prior to filing their consent forms.

25. XPAT knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Accordingly, XPAT's failure to pay overtime to Plaintiff Rechterman and the Putative Collective Action Members was willful and XPAT owes them overtime wages for at least the past three years.

26. XPAT is liable to Plaintiff Rechterman and the Putative Collective Action Members for an amount of liquidated damages equal to all unpaid overtime wages.

27. Plaintiff Rechterman and the Putative Collective Action Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## PRAYER

Plaintiff Rechterman prays for relief as follows:

1. An order allowing this action to proceed as a collective action under the FLSA and directing notice to the Putative Collective Action Members;

2. Judgment awarding Plaintiff Rechterman and the Putative Collective Action Members who join this collective action all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

3. An award of post-judgment interest on all amounts awarded at the highest rate allowable by law; and

4. All such other and further relief to which Plaintiff Rechterman and the Putative Collective Action Members are justly entitled.

Respectfully submitted,

By: /s/ *Neely Balko*
**Neely Balko**
State Bar No. 24082652
nbalko@phippsandersondeacon.com
**PHIPPS ANDERSON DEACON LLP**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND POTENTIAL CLASS MEMBERS**